# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DARIN JONES, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>THE JAMES SKINNER CO., a Nebraska corporation;<br><br>Defendant. | 8:17CV231<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion for Summary Judgment, ECF No. 21, filed by Defendant The James Skinner Co. (Skinner Co.). For the reasons stated below the Motion will be granted.

## BACKGROUND

Unless otherwise indicated, the following facts are those stated in the parties' briefs, supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

Skinner Co.'s Plant Manager, Jason Sims, hired Plaintiff Darin Jones as the Director of Maintenance on October 28, 2015. Jones was "responsible for the overall management and coordination of Skinner's maintenance department, project team, safety program and engineering projects . . . ." Def.'s Br., ECF No. 23, Page ID 188. He

---

[1] *See* NECivR 56.1(b)(1):
The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

managed approximately thirty-six employees and spent a substantial amount of time performing repairs and other managerial work on Skinner Co.'s production floor. Jones reported to Jason Sims until Sims was terminated in or around December 2015. Shortly thereafter, Jones began reporting to Dennis Nolan who was promoted to Vice President of Operations on January 1, 2016.

In January 2016, Nolan noticed that Jones was taking long lunch breaks, arriving to work late, leaving work early, and spending most of his time in his office instead of on the production floor. Nolan also thought Jones too often relied on his subordinate, Jason Tejral, to train him on certain job duties, and, at one point, Jones asked Tejral to draft a list of the actions Jones should take to improve his job performance. Skinner Co. hired Tejral on January 18, 2016, but he previously worked for Skinner Co. from 2001 to 2014. Nolan also claimed he received multiple reports from one employee that Jones "threatened certain Skinner employees," but Jones denies he ever threatened another employee.

When Jones was hired, he informed Skinner Co. that he suffered an aortic aneurism in 2014 and that he was regularly taking blood-thinning medication. On one occasion in January 2016, he went to the hospital after work with what he believed was food poisoning. Jones found out he had a bowel obstruction and called Nolan to inform him. Nolan asked Jones to report back to him when he returned, and Jones missed one day of work. He returned to work with no physical restrictions and, when he returned, Jones told Nolan he had a dissection in his aorta. Jones also missed a day of work on February 11, 2016, to see a doctor, but does not remember why. Jones never requested

accommodation or modification of his job duties due to any physical or medical condition and no Skinner Co. employee ever made comments about Jones's health.

On February 19, 2016, Nolan terminated Jones's employment during a one-on-one meeting. During the meeting, Jones acknowledged that Tejral had been training him on certain aspects of his job. However, Jones testified at his deposition that he regularly received compliments from upper management regarding his job performance and that he received multiple pay raises and bonuses. Nolan did not tell Jones why he was being terminated during the meeting, and Jones testified that he did not know why he was terminated. In its internal documents, Skinner Co. recorded that Jones was terminated for unsatisfactory performance. Jones was forty-nine years old when Skinner Co. hired him.

In his Complaint, ECF No. 1, Jones claims Skinner Co. terminated him because he was disabled and because of his age in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, the Nebraska Fair Employment Practices Act (NFEPA), Neb. Rev. Stat. § 48-1104, and the Nebraska Age Discrimination in Employment Act (NADEA), Neb. Rev. Stat. § 48-1004. He also claims Skinner Co. terminated his employment in retaliation for requesting an accommodation in violation of § 12203 of the ADA and § 48-1114 of the NFEPA.

**STANDARD OF REVIEW**

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)).

"Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner*

4

*v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

### I. Disability Discrimination

"The ADA prohibits a covered employer from discriminating against 'a qualified individual on the basis of disability.'" *Fischer v. Minn. Pub. Sch.*, 792 F.3d 985, 988 (8th Cir. 2015) (quoting 42 U.S.C. § 12112(a)). "In the absence of direct evidence of discrimination, we apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to disability-discrimination claims . . . ." *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016) (citation omitted). Under that framework, "[t]he plaintiff has the burden of establishing a prima facie case: (1) that the plaintiff was disabled within the meaning of the ADA; (2) that the plaintiff was qualified to perform the essential functions of the job; and (3) a causal connection between an

5

adverse employment action and the disability." *Id.* If the plaintiff establishes a prima facie case, "the burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse action." *Id.* If such a reason is articulated, the employee must show it is a pretext for discrimination. *Id.*

Assuming, without deciding, Jones can establish the first two elements of a prima facie case, the evidence does not sufficiently support a causal connection between his alleged disability and his termination. To establish causation in the ADA context, Jones must show that his alleged disability was a motivating factor in Nolan's decision to terminate him. *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 756-57 (8th Cir. 2016) (stating "a mixed-motive causation standard" applies); *but see id.* at 757 n.6 (stating, without holding, that a more demanding but-for causation standard is arguably appropriate).

The only evidence provided in support of Jones's claims is his own deposition testimony. When Jones was hired in October 2015, he informed Jason Sims, Lucas Tejral, and Audie Keaton, Skinner Co.'s president, that he had an aortic aneurism in 2014 and he was taking blood thinning medication. Jones told these individuals about his aortic aneurism in one-on-one settings and there is no evidence that they shared this information with any other employees. Jones Depo., ECF No 26-2, Page ID 247. Jones only told Nolan, the Skinner Co. supervisor who succeeded Sims and terminated Jones, that he had a "dissection [in his aorta]" after Jones returned to work from a hospital visit for his unrelated bowel obstruction in January 2016. *Id.* at Page ID 249 ("[W]e may have talked about my dissection that I have."). Jones initially told Nolan that he went to the hospital for what he thought was food poisoning. Jones also missed a day of work to see

6

a doctor on February 11, 2016, but he could not remember why he went to the doctor. Nolan terminated Jones on February 19, 2016.

Jones argues the temporal proximity of his hospital and doctor visits to his termination is evidence that his alleged cardiac disability motivated Nolan's decision to terminate him. Pl.'s Br., ECF No. 26, Page ID 230. Yet these visits were not related to his past aortic aneurism and, even if they were, temporal proximity is not sufficient, on its own, to establish a causal connection. *Tramp v. Assoc. Underwriters, Inc.*, 768 F.3d 793, 805 (8th Cir. 2014) (citing *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1114 (8th Cir. 2001)). Nor is Nolan's awareness that Jones had a dissection in his aorta sufficient to establish a causal connection. *See Tramp*, 768 F.3d at 1114 (stating "even awareness of [the alleged disability], without more, is not enough to maintain this claim").

Jones also argues that Nolan's stated reason for terminating him—poor performance—contradicts the evidence in the record; therefore, it is evidence that his alleged disability was a motivating factor in his termination. However, Jones did not dispute Nolan's statement that Jones took long lunch breaks, arrived to work late, left work early, and spent too much time in his office instead of on the production floor. Jones merely claims "Skinner provided absolutely no notice to [him] that it believed [his] performance was suffering." Pl.'s Br., ECF No. 26, Page ID 215. Also, the fact that he received a small pay raise in December 2015 is not evidence of adequate performance, because the raise was standard for "all management employees" and not based on personal job performance. Bartholet Aff., ECF No. 22-2, Page ID 79. Thus, Nolan's

7

proffered reason for terminating Jones does not contradict the record but is based on undisputed facts.

Nolan was Jones's supervisor for less than two months and, other than the fact that Nolan terminated Jones a few weeks after Jones disclosed that he had a dissection in his aorta, there is no evidence suggesting Jones's alleged cardiac disability motivated Nolan's decision to terminate him. See *Tramp*, 768 F.3d at 1114. Thus, the Court finds that Jones failed to establish a prima facie case of discrimination under the ADA and the NFEPA[2] because he did not provide sufficient evidence of a causal connection between his alleged disability and Nolan's decision to terminate him.

## II. Age Discrimination and ADA Retaliation

Jones's opposition brief failed to address Skinner Co.'s arguments that his claims for age discrimination and retaliation should be dismissed. See *Demien Constr. Co. v. O'Fallon Fire Prot. Dist.*, 812 F.3d 654, 657 (8th Cir. 2016) (citing *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (declining to review a claim that was not opposed before the district court)). Based on the evidence in the record, these claims lack merit.

According to the Complaint, Jones's retaliation claim is based on his alleged request for an accommodation for a disability. It is undisputed, however, that "he did not request accommodations or job modifications from Skinner [Co.] due to any alleged disability." Pl.'s Br., ECF No. 26, Page ID 223. Jones's claim for retaliation under the ADA and the NFEPA will, therefore, be dismissed.

---

[2] See *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1106 n.2 (8th Cir. 2016) ("Because disability-discrimination claims under the NFEPA are analyzed under the same framework as claims brought under the ADA, we need not conduct a separate analysis of Morriss's state-law claims.").

8

With respect to Jones's age discrimination claim, the record does not contain sufficient evidence upon which a rational juror could find that Jones's age was the but-for cause of his termination. *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 516 (8th Cir. 2011) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) (holding, under the ADEA, plaintiffs bear the burden of establishing age was the but-for cause of their termination)). Therefore, his claims for age discrimination under the ADEA and the NADEA[3] will be dismissed.

Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment, ECF No. 21, filed by Defendant The Skinner Co., is granted;
2. The above-captioned case is dismissed, with prejudice; and
3. A separate judgment will be entered.

Dated this 20th day of August, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge

---

[3] "The NADEA 'is interpreted in conformity with the ADEA.'" *Shultz v. Windstream Commc'ns, Inc.*, 600 F.3d 948, 954 (8th Cir. 2010) (quoting *Humphrey v. Neb. Pub. Power Dist.*, 503 N.W.2d 211, 217 (Neb. 1993).